JULES E. MERSON, T/A J. E. MERSON COMPANY, PLAIN-TIFF-APPELLANT, v. WILLIAM P. SCHWEITZER, DE-FENDANT-RESPONDENT, AND GERTRUDE SCHWEIT-ZER, HIS WIFE, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued December 4, 1961—Decided January 24, 1962.

598

Before Judges GAULKIN, KILKENNY and HERBERT.

*Mr. Seymour Margulies* argued the cause for the appellant (*Messrs. Levy, Lemken & Margulies,* of counsel; *Mr. Seymour Margulies,* on the brief; *Mr. Jacob L. Winograd,* attorney).

*Mr. Fayette N. Talley* argued the cause for the respondent (*Messrs. Leavitt, Talley & Krevsky,* attorneys).

The opinion of the court was delivered by

GAULKIN, J. A. D.   Plaintiff Merson, a Jersey City real estate broker, sued defendants for a commission of $3,000 for arranging a written contract, entered into July 3, 1958, whereby Mr. and Mrs. Manders agreed to buy defendants' home, located in Hillside, N. J.   After trial without a jury the Law Division entered judgment for defendants, and plaintiff appeals.

Before Merson approached Mr. Schweitzer, a Hillside Jewish congregation had endeavored to buy the property through an Elizabeth broker.   For reasons which do not

appear in the record Mr. Schweitzer, though a Jew, refused to sell to the congregation.

Mr. Manders was a member of the congregation. Somehow an appointment was made for Manders (who lived in Hillside) to meet Merson (who was a stranger to him) in Jersey City. Merson admitted that when they met Manders told him that he *represented* the congregation, and that the congregation wanted to buy the property. However, when Merson called Schweitzer he told Schweitzer the buyer was Manders. The price, incidentally, was $60,000, all cash. In cross-examining Schweitzer, plaintiff's attorney brought out that in his deposition before trial Schweitzer had testified as follows (emphasis ours):

"Q. 'Did you in the first conversation with Mr. Merson inquire of him as to who was going to purchase the property?
Answer: Yes.
Question: Who did he tell you?
Answer: He gave me the names of Mr. and Mrs. Manders and said that in order to see if the property was suitable would I agree to let Mr. Manders take his wife to see the property. *I asked him at that time who he was because I wasn't interested in selling this property to anyone.*
He told me he was a very responsible man, very high caliber, and as I understood it, he was connected with the R. C. A. Company.' "

At another point Mr. Schweitzer testified:

"I said I would like very much to know who this man is, what type of man he is. He gave me the name as a Mr. Manders.
I said, 'Where does he work, what is his job?'
He said, 'He is a very high official of the R.C. A. Company.'
I said, 'In other words, you know him to be a man of fine reputation.'
He said yes."

Schweitzer did not tell Merson that he would not sell to the congregation. However, it is plain from the evidence that Merson knew, at least, that the deal would be endangered if the interest of the congregation were revealed to defendants.

The first proof of that knowledge is Merson's statement to Schweitzer, in their first conversation, that Manders was the buyer, when he well knew that the congregation was the true purchaser, and this in spite of Schweitzer's specific inquiry as to the identity of the buyer. A broker eager to have the seller accept his buyer does not usually represent to his principal, the seller, that the agent of the buyer is the buyer, especially in a $60,000 all cash deal. Ordinarily the buyer has greater financial strength than his agent, and the seller is more likely to be impressed by the buyer's financial competence to perform than by the agent's. On the other hand, the buyer's representative does not ordinarily bind himself to pay $60,000 cash on behalf of an undisclosed principal. When such arrangements are made, without the knowledge of the seller but with the knowledge of the broker, they must necessarily be made by prearrangement between the buyer's representative (or the buyer, or both) and the broker.

We pass the question whether a real estate broker ever has the right to conceal such an arrangement from the seller. Suffice it to say for the decision of the case at bar that, when Schweitzer asked Merson who the buyer was, Merson was obliged to tell him the truth. Merson argues that he did not know the truth would be material to Schweitzer, but that is no answer. First of all when the seller asks the broker a direct question he is entitled to a complete and truthful answer. The broker does not have the right to speculate whether the answer is material to the seller. If it is in fact material to the seller, even though the materiality is unknown to the broker, the broker may forfeit his right to commission if his answer is false. Furthermore, Merson must have known that Schweitzer was not interested in just a name; that Schweitzer wanted to know precisely who the buyer was.

If there could be any possible doubt that Merson knowingly and willfully concealed the truth from Schweitzer,

it would be dispelled by the equivocations which Merson uttered after the initial conversation with Schweitzer.

On May 23, 1958, almost six weeks before the contract was signed, Merson wrote the following letter to Mr. Schweitzer's secretary, Mr. Schweitzer then being in Europe. The language of the letter was carefully and skillfully chosen to conceal the truth and to continue the deception that Mr. and Mrs. Manders were buying the house for their own use:

"May I thank you for the courtesy extended us this week in showing Mr. Schweitzer's home at Westminster and Wilder Streets, Hillside, New Jersey, to my clients.

I assume that they are showing an interest due to the fact that they are arranging to call in a contractor or architect to have them inspect the house in order to ascertain how much it is going to cost to alter and redecorate. It will be necessary for them to do so because the house in its present condition needs a remodeling job to suit their needs.

I am trying to arrange final inspection and may I again thank you for your kind cooperation.

Very truly yours,
s/ J. E. Merson"

And that is not all. When the Elizabeth broker who had tried unsuccessfully to obtain the property for the congregation told Schweitzer, upon his return from Europe and after the contract was signed, that Manders was a "front" for the congregation, Schweitzer telephoned plaintiff and demanded to know whether that was true. Merson, with obvious consciousness of his guilt, answered: "Well, I did hear something this weekend when I was down at the shore about this matter, but I don't know how much there is to it." This was months after Manders had told Merson the congregation was the buyer.

Schweitzer demanded Manders' telephone number. Merson said he did not have it. Finally he did give Schweitzer the name of the attorney for the congregation, who also acted as attorney for Manders in the transaction. Schweitzer called the attorney, ascertained the truth, and in due course

the contract was annulled by mutual agreement of Schweitzer and the congregation.

For the foregoing reasons, the trial judge rightly concluded, in his oral opinion, that "plaintiff breached the element of a fiduciary relationship and accordingly the right of plaintiff to commission has been forfeited."

Plaintiff argues that defendants should not be permitted to raise the defense of disinclination to sell to the congregation, and attempts to draw a parallel between this case and such cases as *Barrows v. Jackson*, 346 *U. S.* 249, 73 *S. Ct.* 1031, 97 *L. Ed.* 1586 (1953). We find no merit in this contention.

The judgment is affirmed, with costs.